UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDREW LEE GISSENDANNER, JR.

          Plaintiff,                **DECISION AND ORDER**

       v.                        6:23-CV-06726 EAW

GENERAL MOTORS and UAW 1097,

          Defendants.
_____

# INTRODUCTION

Plaintiff Andrew Lee Gissendanner, Jr. ("Plaintiff") brings this action against defendants General Motors and UAW 1097 ("Defendants"), alleging that Defendants conspired to deny him a promotion based on his race. (Dkt. 1 at 1). Currently pending before the Court is Plaintiff's motion to proceed *in forma pauperis* and motion to appoint counsel. (Dkt. 2; Dkt. 3).

The Court has reviewed Plaintiff's motion for *in forma pauperis* status (Dkt. 2), and it is granted. The Court has also reviewed Plaintiff's complaint as required by 28 U.S.C. § 1915(e)(2). For the reasons that follow, Plaintiff's complaint is dismissed. However, given Plaintiff's *pro se* status, the Court will grant him the opportunity to amend his claim.

## BACKGROUND

Plaintiff filed his complaint on December 19, 2023. (Dkt. 1). He also filed a motion to proceed *in forma pauperis* (Dkt. 2) and a motion to appoint counsel (Dkt. 3). As is required at this stage of the proceedings, the Court takes Plaintiff's allegations as true.[1]

In his complaint, Plaintiff alleges that Defendants "worked together" to violate his rights and the rights of other workmen by engaging in nepotism and systemic racism. (Dkt. 1 at 1). Specifically, Plaintiff alleges that he was not treated the same as other workers in his area in "Cool Rail," and was passed over for training and promotions. (*Id*. at 3). Plaintiff alleges, somewhat confusingly, that on June 21, 2021, individuals "below [his] seniority in an area before I . . . gotten a chance management and union denied me a chance to get in the area," and Nick Capone, Plaintiff's union representative, said "[h]e is picking the best of the best." (*Id*.). Plaintiff further alleges that the Defendants are "targeting Jim Crow Rule," and are "not letting [him] train . . . not letting [him] progress [and] violating [his] property." (*Id*. at 4). Plaintiff asks that the Court award him punitive damages for mental anguish, as he has been "mistreated since 2015." (*Id*. at 4).

---

[1] This is not the first case Plaintiff has brought against General Motors. *See, e.g., Gissendanner v. General Motors Corporation, et al.*, Case No. 6:20-cv-06109 (W.D.N.Y. Feb 18, 2020) (the "2020 Action"). On November 28, 2022, the undersigned granted summary judgment in favor of General Motors and dismissed Plaintiff's claims in the 2020 Action. (*See id*.; Dkt. 39). The claims Plaintiff brought in the 2020 Action concerned complaints he made about his work in the "screw machine department" between 2017 through 2019, and appear to be unrelated to the claims he asserts in the case presently before the Court.

Plaintiff attaches to his complaint 14 pages consisting of various emails, photographs, and phone messages, including photographs of racist graffiti and a burned duck. (Dkt. 1-1; *see also id*. at 4-6). As relevant to Plaintiff's claim, the exhibits include a "New Work Announcement" for "electrification work," for which new positions would be available. (*Id*. at 1, 3, 10). The announcement states, in relevant part:

> This is an exciting and important new venture for our membership, as this product launch starts LR will be posting new jobs that are available and you will be able to apply through the 63a/63b job application process. Our Sisters and Brothers in the mask operation will back fill throughout the plant by seniority and will not be automatically placed into the new work jobs. There is confusion around the corporate message when it comes to the placement of employees currently in the mask area and the jobs this new work will create. These new jobs will be filled through the 63a/63b process by seniority. This new work will add new jobs without our bargaining unit, we have an approximate number of new jobs that will be communicated after we have verified it to be accurate.

*Id*. Plaintiff has made a handwritten notation that states, "I never was in mask and 7 people with less seniority got an A level job before I did." (*Id*. at 1). Plaintiff further states that both his union and management have constantly lied to him about his seniority rights, failed to make sure he was treated equally and fairly at General Motors, and that "[t]o this day 06/15/2023 [he] ha[s] been denied an A-level position." (*Id*. at 2).

In an email dated September 28, 2022, Plaintiff asked Nick Capone for clarification on why his seniority was violated, citing to four individuals (Rich Knorr, Cassandra Blackmon, Walter Curtis, and Dave Keller), two of whom had "less seniority" than he did, who applied for and were chosen for an A-level job. (*Id.* at 7-8). Plaintiff further asked

that the interview process be explained to him, as well as "the scoring system that was effective at that time before they did away with it." (*Id*. at 7).

The exhibits also include an email from Plaintiff dated August 3, 2023, in which he states that he has been "filing since 2015 against General Motors," and complaining that he has not been trained on certain machines despite his seniority. (*Id*. at 9). Plaintiff further notes that an individual named "Jimmy" who started working in 2016 was "working as an A level." (*Id*.).

The exhibits also include an email from Plaintiff to an individual named Mr. Barbie, in which Plaintiff references the new job in Cool Rail, and explaining that his seniority was violated with respect to this job posting. (*Id*. at 11-12). Plaintiff references the above-mentioned individuals (Knorr, Blackmon, Curtis, and Keller), who applied and received the new job, but he did not. (*Id*.). Plaintiff notes that he started working at General Motors in September 2013, Curtis started working in July 2006, Keller started working in September 1997, Knorr started working in April 2014, and Blackmon started working in March 2018 (*id*. at 11)—in other words, Plaintiff was more senior than two of these individuals. Plaintiff contends that Nick Capone told Plaintiff that he was selecting "the best of the best" for the position, and that "[f]or a union person those words are prejudice and discriminating." (*Id*. at 12).

Finally, Plaintiff references a communication with a "Mrs. Farrell," forwarding e-mails he sent to a Mark Barbee about the "nepotism and systemic racism" that the

Rochester UAW has displayed. (*Id.*). Plaintiff states that he has worked for General Motors for over nine years, that during that time his "seniority has been violated multiple times," and also that the union has permitted management to violate his seniority. (*Id.*). Plaintiff further notes that "Nick Capone has the advantage at the popular vote to stay in his elected position," which "[w]eeds out . . . people like me and grants favorable jobs to people that ha[ve] less seniority than me." (*Id.*).

## DISCUSSION

### I. Legal Standard

"Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements." *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at *2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, No. 6:17-CV-06121(MAT), 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017). In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor. *See, e.g.*, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Upon conducting this initial screening, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005). "In addition, if the Court 'determines at any time

that it lacks subject-matter jurisdiction, the Court must dismiss the action.'" *West v. Sanchez*, No. 17-CV-2482 (MKB), 2017 WL 1628887, at *1 (E.D.N.Y. May 1, 2017) (quoting Fed. R. Civ. P. 12(h)(3)); *see also English v. Sellers*, No. 07-CV-6611L, 2008 WL 189645, at *1 (W.D.N.Y. Jan. 18, 2008) ("[E]ven pleadings submitted *pro se* must fit within the subject matter jurisdiction of an Article III court. . . .").

## II. Analysis

Although his allegations are somewhat unclear, it appears that Plaintiff contends he was denied a promotion into a new electrification position, while other individuals—including two individuals less senior than him—were granted placement in an electrification position. "To establish a prima facie case of discrimination for failure to promote under Title VII a plaintiff must show that: 1) he is a member of a protected class; 2) his job performance was satisfactory; 3) he applied for and was denied promotion to a position for which he was qualified; and 4) the position remained open and the employer continued to seek applicants." *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 297 (S.D.N.Y. 2012) (quotations, citations, and alterations omitted); *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (for a failure to promote claim, a "plaintiff must allege that (1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications" (quotations and citation omitted)). At the pleading

stage, the plaintiff also must plausibly allege racial animus—in other words, that he was denied a promotion based on his race. *Rowe v. N.Y.S. Dep't of Taxation & Fin.*, 786 F. App'x 302, 304-05 (2d Cir. 2019).

To the extent Plaintiff alleges that his "seniority was violated" because he was not granted a position performing electrification work (*see, e.g.*, Dkt. 1 at 1 (alleging that Defendants violated his seniority); Dkt. 1-1 at 2 (stating that his union failed to protect his seniority rights); *id*. at 12 ("The union has allowed management to violate my seniority.")), this allegation, standing alone, does not form the basis for a federal claim. In other words, Defendants did not violate any federal law by their decision to hire into these new electrification positions some individuals who were less senior employees at General Motors.

While Plaintiff makes blanket allegations about "systemic racism" (*see* Dkt. 1 at 1; Dkt. 1-1 at 12), he fails to plausibly allege that he was denied a position performing electrification work due to his race. While Plaintiff alleges that other employees, including Knorr, Blackmon, Curtis, and Keller, were hired to perform electrification work, Plaintiff does not allege the race of these employees, and the complaint does not otherwise make any inference that Plaintiff was denied an electrification position because he is black.[2] Without any such allegations, Plaintiff has failed to plausibly allege that he was denied a

---

[2]      Plaintiff does not specifically allege that he is African American, but given the nature of the graffiti and his allegations about the "Jim Crow Rule," the Court assumes that Plaintiff is African American.

promotion based on his race. *See Rowe*, 786 F. App'x at 304-05 (holding that the district court did not err in dismissing the plaintiff's Title VII failure to promote claim, including because the plaintiff "made only conclusory allegations that he was denied promotions due to racial animus, otherwise alleged that nepotism guided some of the hiring decisions concerned, and submitted documentation showing merely that he was not hired for positions because others were selected," and "[t]hese allegations neither show nor give rise to a plausible inference of racial animus"); *see also Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) ("Because the Complaint makes no allegations as to whether Brodt was treated differently than similarly situated employees, it fails to raise an inference of discrimination as to any failure-to-promote claim."); *Hussey v. N.Y.S. Dep't of Law*, 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013) (dismissing claim for failure to promote where the plaintiff "offer[ed] no facts in support of that claim and therefore fail[ed] to allege sufficiently that the failure to promote her . . . was based on her race"); *Alvarez v. Rosa*, No. 11 Civ. 3818(KBF), 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (dismissing failure to promote claim, including because the plaintiff "provide[d] only speculations, labels, and conclusions, in support of her claims" and "fail[ed] to identify any particular conduct or remarks made by the individual defendants that could be viewed as reflecting discriminatory animus").

The only information relevant to racial animus are the photographs of the racist graffiti in the exhibits attached to Plaintiff's complaint. (Dkt. 1-1 at 4-6). However, these

photographs, without further explanation, do not raise an inference of discrimination as it pertains to Plaintiff's failure to promote claim. For example, Plaintiff does not allege who created the graffiti, if, when, and where[3] he personally observed the graffiti, or any other allegations connecting this graffiti with the denial of his application to perform the electrification work. Without further specificity regarding his allegations of racial animus, Plaintiff has failed to allege that he was denied a position in the electrification department based on his race.

The Court further notes that, even if Plaintiff had adequately alleged racial animus, the federal basis for Plaintiff's claim is unclear. Other than alleging generally that Defendants failed to promote him, Plaintiff has failed to specifically articulate whether he brings his claim pursuant to Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*, pursuant to the New York Human Rights Law, New York Executive Law § 290, *et seq.*, or some other statute. Likewise, Plaintiff has failed to articulate the basis for suing each named defendant. Finally, to the extent Plaintiff brings his claim pursuant to Title VII, Plaintiff has failed to allege that he adequately exhausted his administrative remedies with respect to any failure to promote claim. Accordingly, in his amended complaint, Plaintiff is further advised that he must articulate the basis for federal jurisdiction, the specific claims he pursues, the specific basis for suing both General Motors and UAW

---

[3] A text message accompanying one of the graffiti photos indicates that some of the graffiti was found in the bathroom.

1097 and, to the extent his claim requires it, any allegations pertaining to exhaustion of administrative remedies.

For those reasons, Plaintiff's claim based on a failure to promote is hereby dismissed.[4] Plaintiff's motion to appoint counsel (Dkt. 3) is denied as moot.

### III. Leave to Amend

As referenced above, given Plaintiff's *pro se* status, the Court will grant him leave to file an amended complaint so that he may have the opportunity to better articulate his claims. Plaintiff must file his amended complaint within **45 days** of the date of this Decision and Order. If Plaintiff fails to file an amended complaint within that time, the Clerk of Court is directed to dismiss this case without further Order of the Court.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against Defendants so that the amended complaint stands alone as the only complaint that Defendants must answer in this action.

---

[4] The complaint also makes a passing reference to Defendants' failure to train Plaintiff. (*See* Dkt. 1 at 3). To the extent Plaintiff brings a claim based on a failure to train him due to his race, any such claim suffers from the same problems as his failure to promote claim—that is, the complaint lacks sufficient allegations pertaining to racial animus; *i.e.*, that Defendants failed to train him due to his race.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (Dkt. 2) is granted. Plaintiff's complaint (Dkt. 1) has been screened in accordance with 28 U.S.C. § 1915(e)(2), and the Court concludes that his claims must be dismissed as discussed herein. Further, Plaintiff's motion to appoint counsel (Dkt. 3) is denied.

Given Plaintiff's *pro se* status, and as described above, the Court will grant him leave to file an amended complaint within **45 days** of the date of this Decision and Order. If Plaintiff fails to file an amended complaint by that date, the Clerk of Court is directed to dismiss this case without further Order of the Court.

In the event Plaintiff fails to file an amended complaint and the case is dismissed, the Court certifies, for the reasons discussed above and pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a)(3)(A), that any appeal from this Decision and Order would not be taken in good faith. Accordingly, leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed *in forma pauperis* on appeal should be directed to the United States Court of Appeals for the Second Circuit in accordance with Federal Rule of Appellate Procedure 24.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 14, 2024
       Rochester, New York